Submitted on plea of no contest February 18, plea of no contest accepted,
attorney reprimanded March 22, 1983

In re Complaint as to the Conduct of
## CHESTER C. SCOTT,
*Accused.*

(OSB No. 82-12, SC 29448)

660 P2d 157

## MEMORANDUM OPINION

The Oregon State Bar filed a complaint against Chester Scott on July 26, 1982, accusing him of violating the following Disciplinary Rules of the Code of Professional Responsibility:

"* * * Rule 5-104(A) [entering into a business transaction with a client], * * * Rules 5-101(A) [accepting employment on behalf of a client when the attorney's professional judgment could be affected by the attorney's own financial or business interests] and 5-105(A)-(C) [conflict of interest]."

The material allegations of the complaint are set forth as follows:

"II

"The Accused, Chester C. Scott, is * * * an attorney at law, duly admitted by the Supreme Court of the State of Oregon to practice law in this state and a member of the Oregon State Bar, having his office and place of business in the County of Polk, State of Oregon.

"III

"* * * [T]he Accused had a twenty-six (26) percent ownership interest in Modular Systems, Inc., an Oregon corporation engaged in the construction and sale of new homes, and the Accused's wife had a twenty-four (24) percent ownership interest in that corporation. * * * [T]he Accused was a partner of Steven Pyles in various businesses, Pyles held a twenty-six (26) percent ownership interest in Modular Systems, Inc., and Pyles' wife held a twenty-four (24) percent ownership interest in that corporation. * * * Steven Pyles was the president of Modular Systems, Inc., and the Accused was the secretary and attorney for that corporation. The Accused also provided legal representation to Pyles.

"IV

"On or about July 5, 1978, Maxine (Walls) Glantz retained the Accused as her attorney to represent her in a domestic relations matter involving the interpretation of a property settlement agreement. On or about July 13, 1978, the Accused obtained a six thousand dollar ($6,000.00) payment for Mrs. Glantz. The Accused continued to represent Mrs. Glantz with regard to the property settlement

agreement and his last correspondence with the attorney for Mrs. Glantz's former husband was on October 12, 1978.

"V

"After Mrs. Glantz received the six thousand dollar ($6,000.00) payment referred to above, the Accused asked Mrs. Glantz if she was interested in investing that money and an additional four thousand dollars ($4,000.00) in a construction loan. On or about August 7, 1982, Mrs. Glantz loaned Modular Systems, Inc., ten thousand dollars ($10,000.00). The Accused prepared a promissory note and second mortgage on certain real property in Marion County, Oregon, on behalf of Modular Systems, Inc. Steven Pyles, as president, and the Accused, as secretary, executed the documents on behalf of the corporation. The interest rate on the loan was 10 1/2 percent, the same as the rate on the debt owed by Modular Systems, Inc., to a savings and loan association which held a prior mortgage. No premium rate of interest was established for the debt and mortgage to Mrs. Glantz despite her secondary position. No title insurance was provided with regard to Mrs. Glatz's [sic] mortgage.

"VI

"* * * Mrs. Glantz relied upon the Accused for legal advice and representation of her interests. During the course of borrowing money from Mrs. Glantz for Modular Systems, Inc., the Accused did not tell Mrs. Glantz that their interests in the transaction were adverse, that the existence of differing interests had or might have had effects on the Accused's ability to exercise his professional judgment for the protection of Mrs. Glantz, and that Mrs. Glantz should seek independent counsel. During the course of borrowing money from Mrs. Glantz, the Accused did not memorialize any disclosure by him or any consent of Mrs. Glantz in a written record.

"VII

"The aforesaid conduct of the Accused was and is unethical and in violation of the standards of professional conduct established by law and by the Oregon State Bar, specifically Code of Professional Responsibility Canon 5, Disciplinary Rule 5-104(A), as well as Disciplinary Rules 5-101(A) and 5-105(A)-(C).

"AND, for its second cause of complaint against the Accused, the Oregon State Bar alleges:

"* * * * *

## "II

"In or about March, 1979, the proceeds of a sale of the real property in Marion County that was the subject of the mortgage referred to above in the first cause of complaint were available to Modular Systems, Inc., and the Accused to repay the ten thousand dollars ($10,000.00) indebtedness to Mrs. Glantz. The Accused asked Mrs. Glantz if she wanted to loan the ten thousand dollars ($10,000.00) to Steven Pyles. Mrs. Glantz agreed to loan Pyles the money. On or about April 11, 1979, Mrs. Glantz executed and delivered to the Accused a satisfaction of the mortgage referred to above. The Accused prepared the form of satisfaction for Mrs. Glantz. On or about April 11, 1979, the Accused delivered to Mrs. Glantz a promissory note and a second mortgage on certain real property in Polk County, Oregon. The note and mortgage were prepared by the Accused and executed by Steven Pyles and his wife. Mr. Pyles received ten thousand dollars ($10,000.00) during the closing of the escrow on the sale of the real property in Marion County that was the subject of the mortgage referred to above in the first cause of complaint. Mr. Pyles used the ten thousand dollars ($10,000.00) loaned to him by Mrs. Glantz to purchase the real property in Polk County that was the subject of the Pyles' mortgage to Mrs. Glantz. That real property was owned by a company in which the Accused has an ownership interest.

## "III

"The interest rate on the debt owed by Steven Pyles to Mrs. Glantz and secured by her second mortgage on the real property in Polk County, was 10 1/2 percent, the same as the rate of interest on the debt owned [sic: owed] by Pyles to a savings and loan association which held a prior mortgage; no premium rate of interest was established for the debt to Mrs. Glantz despite her secondary position. No title insurance was provided with regard to Mrs. Glantz's mortgage. The value of the mortgages on the real property securing Pyle's debt to Mrs. Glantz was approximately the market value of the property.

## "IV

"In or about March or April, 1980, the Accused went with Steven Pyles to a meeting with Mrs. Glantz to discuss the fact that Pyles was delinquent in his loan payment to Mrs. Glantz. The Accused had no further dealings with Mrs. Glantz. On September 9, 1981, the Accused received a

copy of a letter to Pyles from an attorney, * * * who, on behalf of Mrs. Glantz, made a demand on Pyles for repayment of his ten thousand ($10,000.00) indebtedness to Mrs. Glantz.

"V

"* * * Mrs. Glantz relied upon the Accused for legal advice and representation of her interests. During the course of the loan by Mrs. Glantz to Steven Pyles, the Accused did not tell Mrs. Glantz that Pyle's interest was adverse, that Pyle's interest and the Accused's personal interest had or might have had effect on the Accused's ability to exercise his professional judgment for the protection of Mrs. Glantz, and that Mrs. Glantz should seek independent counsel. During the course of the loan by Mrs. Glantz to Pyles, the Accused did not memoralize *[sic]* any disclosure by him or any consent of Mrs. Glantz in a written record.

"VI

"The aforesaid conduct of the Accused was and is unethical and in violation of the standards of professional conduct established by law and by the Oregon State Bar, specifically Code of Professional Responsibility, Canon 5, Disciplinary Rules 5-101(A) and 5-105(A)-(C)."

On October 18, 1982, the following Plea of No Contest was signed by the accused and the General Counsel of the Oregon State Bar:

"Comes now the Board of Governors and Chester Scott, Attorney at Law, and enter into a No Contest Plea Agreement pursuant to Rule of Procedure 37.1

"I.

"Chester Scott was admitted to the practice of law in Oregon on September 24, 1965 and is currently an active member of the Oregon State Bar.

"II.

"A formal disciplinary complaint was served on Chester Scott, Attorney at Law, by the Oregon State Bar on August 9, 1982. A certified copy of the formal complaint is attached hereto and incorporated by reference herein.

"III.

"Chester Scott has no prior formal discipline imposed by the Oregon Supreme Court.

"IV.

"Chester Scott has no desire to defend against the formal complaint filed by the Oregon State Bar in the above entitled case.

"V.

"Chester Scott agrees to accept a public reprimand for the violations of the Code of Professional Responsibility specified in the formal complaint.

"VI.

"The Board of Governors has reviewed the formal complaint against Mr. Scott and recommends that the Supreme Court impose a public reprimand for the ethical violations specified therein.

"VII.

"This No Contest Plea has been entered into freely and voluntarily by Chester Scott as evidenced by his verification.

"Wherefore, the Board of Governors and Chester Scott request the General Counsel of the Oregon State Bar submit this matter to the Disciplinary Review Board and the Oregon Supreme Court with the recommendation that case No. 81-12 be resolved as specified herein."

The Disciplinary Review Board concluded, with a dissent by its chairman, that it was unable to recommend acceptance or rejection of the Plea of No Contest based upon the record before it because the Board felt it needed additional information to establish whether there had been, in fact, a violation of the ethical charges states in the complaint.

We find from a review of the record, which includes the transcript of the Lincoln-Polk-Benton Counties Local Professional Responsibility Committee, that there is a sufficient factual basis upon which to accept the no contest plea agreement.

This opinion shall serve as a public reprimand to Chester Scott. The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).